**[ORAL ARGUMENT SCHEDULED MAY 16, 2025]**

**Nos. 25-5091, 25-5132**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

NATIONAL TREASURY EMPLOYEES UNION, et al.,

*Plaintiffs-Appellees*,

*v.*

RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau, et al.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of Columbia

---

**REPLY IN SUPPORT OF EMERGENCY MOTION
TO ENFORCE OR CLARIFY STAY PENDING APPEAL**

---

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
CATHERINE PADHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7712*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5091*

# INTRODUCTION

Less than two weeks ago, this Court cleared the way for defendants to conduct reductions in force at CPFB, staying the district court's injunction barring such measures so long as defendants made particularized assessments to determine that affected employees were "unnecessary to the performance of defendants' statutory duties." Stay Order at 1 (D.C. Cir. Apr. 11, 2025). This Court's order—which appropriately committed the requisite assessments and determinations to *defendants*—reflects the serious separation-of-powers problem that would arise were a court permitted to direct the Executive Branch *how* to comply with a statute. Yet the district court has once again embarked down that path, improperly inserting itself into matters committed to the Executive Branch and seeking to micromanage CFPB's implementation of the statute.

The district court's new injunction violates any reasonable understanding of this Court's Stay Order, as does the inquisition the court is currently undertaking—with a hearing scheduled *this Monday* at which it has ordered that high-ranking agency officials, including CFPB's Chief Legal Officer, must be available to testify about the basis for the agency's determination that the reduction in force will not prevent CFPB from

performing its statutory duties. *See* Minute Order (April 21, 2025). This Court's intervention is urgently needed to put a halt to this misguided effort to second-guess determinations regarding staffing and managerial decisions that both Article II and this Court's Stay Order vest in the Executive Branch, and not in the district court.

Plaintiffs' suggestion that this Court lacks the tools to enforce its own order is meritless. This Court has authority to enforce its Stay Order, and it can and should exercise that authority to ensure that defendants may proceed as this Court authorized them to do, without interference from a district court that has now, for the second time, improperly enjoined defendants from employing a lawful measure to streamline the agency's workforce in accordance with the President's directions.

### ARGUMENT

**I.    This Court Should Restrain The District Court From Violating The Stay Order.**

**A.** After the district court entered a sweeping injunction barring all reductions in force, this Court stayed that expansive prohibition and permitted defendants to conduct such reductions as to "employees whom defendants have determined, after a particularized assessment, to be

unnecessary to the performance of defendants' statutory duties." Stay Order at 1; *see also id.* at 1-2 (permitting work stoppages that "defendants have determined, after a particularized assessment, would not interfere with the performance of defendants' statutory duties"). In doing so, the Court restored and protected important Executive Branch prerogatives to manage CFPB in a politically accountable manner in line with the President's directions, including by using lawful, congressionally approved tools to streamline the Bureau during this appeal.

**B.** The district court has profoundly misunderstood this Court's order, which plainly leaves *defendants* in charge of both the process underlying and the substance of the requisite particularized assessments and determinations regarding CFPB's ability to comply with its statutory duties. Instead, the district court has assumed supervision over those matters, both contravening the careful language of this Court's Stay Order and intruding on the Article II prerogatives that this Court's Stay Order should have shielded. Rather than determining *whether* defendants had made a particularized assessment regarding capacity to perform statutory duties, the district court's principal concern is whether the defendants got that calculation *right*.

3

For instance, while recognizing that defendants filed a declaration describing the particularized assessment, accompanied by an office-by-office list of the employees subject to the reduction in force, the district court opined that the "declaration does not describe any consultation with the heads of the various offices involved" in developing this list. Order, Dkt. 113, at 4. The district court repeatedly emphasized its concerns regarding "the apparent lack of consultation with the heads of the statutorily mandated agency components involved" as a reason to entirely disregard defendants' submissions. Order 5; *see also id.* at 4 (stating that "no managers in Consumer Response were consulted by agency leadership"); *id.* (emphasizing that none of the senior leaders who "will remain after the [reduction in force] . . . were consulted about how these terminations would impact the [Office of Research's] ability to fulfill its statutory duties"). The district court likewise expressed its disapproval of the agency's speed, Order 5, and of the particular employees CFPB chose to retain, Order 4.

It was on the basis of such concerns—concerns going to the process and substance of defendants' particularized assessments—that the district court reimposed an across-the-board injunction against a reduction in force

4

going forward. *See* Order 7. This new injunction is designed to allow the district court to make a searching inquiry—complete with discovery and an evidentiary hearing with live testimony from high-ranking officials—into the details of the agency's determinations about how many, and which, employees were necessary for the performance of statutory obligations. *See* Order 5.

**C.** This Court's Stay Order entitles defendants to engage in a reduction in force after taking the steps this Court prescribed. The district court's new injunction to the contrary should be vacated, and this Court should issue relief in a form that makes clear that any proceedings aimed at probing the basis for defendants' determinations regarding statutory duties are improper. The district court has reimposed the injunction this Court stayed absent any finding that defendants failed to conduct a particularized assessment of the agency's ability to comply with its statutory duties. And the district court has demonstrated a serious misunderstanding of the contours of what remains of that injunction. This Court's order does not permit the district court to impose a preclearance regime on defendants' decisions regarding *how* to fulfill CFPB's statutory duties or what reductions in force will allow it to do so. This Court should

immediately stop the district court's ongoing, searching inquiry into the adequacy of the Executive Branch's particularized assessments and resulting determinations about how many and which employees the Bureau needs to fulfill its statutory obligations.

**D.** This Court should act now—whether through vacatur, clarification, or any other appropriate relief—to ensure that any district court enforcement of the partially stayed preliminary injunction is consistent with this Court's previous Stay Order, particularly given the imminent hearing involving compelled testimony from CFPB leadership.

To be clear, defendants made no objection below to providing the district court with Chief Legal Officer Paoletta's declaration explaining that defendants undertook an office-by-office inquiry and for each, made a determination about how many employees should be retained after considering the office's role in fulfilling CFPB's statutory obligations. Paoletta Decl., Dkt. 109. No reasonable factfinder could conclude that this level of detail is insufficient to satisfy the instruction to undertake a particularized assessment.

That said, plaintiffs are wrong to assert (Response 8-9) that defendants ask this Court to weigh evidence in the first instance. Rather,

6

defendants ask only that this Court stop the district court from once again enjoining CFPB's politically accountable leaders from undertaking reductions in force and work stoppages based on the court's contrary management judgment, and to make clear that it has no proper authority to conduct an inquisition into or second-guess the basis for their determinations. Nothing in this Court's Stay Order authorizes the district court to inquire into whether defendants' assessments are substantively correct—*i.e.*, based on the number or type of employees the court deems necessary to fulfill CFPB's statutory duties. *See* Order 4. Nor does the Stay permit the district court to declare defendants' assessment procedurally unsatisfactory—*e.g.*, because it was conducted more quickly than plaintiffs or the court had hoped, *see* Order 3, 5, or because it was conducted without consulting individuals that plaintiffs and the district court believe should have participated in the assessment, *see* Order 4.[1]

---

[1] The district court's suggestion (Order. 5-6) that an injunction was warranted because defendants built upon their prior work in planning a reduction in force is entirely misplaced; this Court's Stay Order in no way prevented defendants from incorporating efforts predating the Stay into their compliance with this Court's requirements.

7

**E.** Finally, plaintiffs' assertion (Response 12, 18-20) that defendants "ignore" other provisions of the preliminary injunction still in effect is also misplaced. The district court's new injunction was not based on any data-related concerns. *Cf.* Response 19-20. And plaintiffs' arguments based on the Office of Consumer Response concede that defendants left employees working in that office. *See* Response 18-19. Their view that the number of remaining employees is inadequate to fulfill the office's statutory duties and comply with the preliminary injunction's sixth provision simply repeats their error in overriding the judgment of CFPB's management about how to carry out the agency's functions.

## II.   This Court Has Jurisdiction To Enforce Its Stay Order.

Plaintiffs contend this Court cannot grant defendants' requested relief, insisting that a writ of mandamus is this Court's only mechanism to enforce its Stay Order. *See* Response 8-13. This circumscribed view of this Court's authority is baseless.

**A.** To begin, plaintiffs concede (Response 12) that this Court may clarify its Stay Order. Their assertion that "defendants are not truly seeking clarification," *id.*, is puzzling in light of defendants' repeated requests for precisely that relief, *see* Motion 1, 6, 10, 11, 12, 13. And plaintiffs'

8

characterization of the requested clarification as a bid for adjudication of "a factual dispute" about compliance "with the preliminary injunction *as it is written*," Response 12, is wrong and highlights their misunderstanding about a permissible district court inquiry. Defendants sought relief from this Court not to weigh the parties' evidence regarding compliance, but to correct the profound misunderstanding that plaintiffs and the district court have manifested regarding what constitutes compliance. *See* Motion 6-10. And the question before the district court is emphatically *not* whether defendants are complying with the preliminary injunction "as it is written," Response 12—it is whether defendants are complying with the injunction as it remains in force after this Court's order staying significant parts of it. *See supra* pp. 3-7.

Consistent with plaintiffs' concession regarding this Court's authority to clarify, this Court should at minimum issue an order making clear that this Court's Stay Order precludes the district court from second-guessing the processes underlying or wisdom of defendants' assessments

9

and determinations about the number of employees needed for CFPB to fulfill its statutory duties.[2]

**B.** This Court is not limited, however, to clarifying its Stay Order. The district court's new order—whether characterized as an injunction or a temporary restraining order—violates any reasonable understanding of the Stay Order, and this Court may enforce that order through any appropriate relief, including vacatur.

This Court may enter any "writ[] necessary or appropriate in aid of [its] . . . jurisdiction[]," not just a writ of mandamus. 28 U.S.C. § 1651; *see Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 273 (1942) (explaining "a federal court may avail itself of all auxiliary writs . . . as an incident to the appeal

---

[2] Plaintiffs wrongly suggest (Response 13-14) that defendants somehow conceded the propriety of the new injunction at the brief district court hearing; the district court gave defendants no opportunity to object to such relief, which plaintiffs had not sought in their motion. *See* Tr. 17 (court acknowledging that it did not have before it "a motion asking [the court] to do something," but rather only a request "to issue an order to show cause"); Tr. 17-18 (sua sponte construing plaintiffs as "also asking [the court] to freeze the situation," and stating that such a request would "need[] to be filed and [defendants] need to be able to respond to it"); Tr. 18-19 (after plaintiffs' "oral motion right now," court making an "oral order right now""); Tr. 19 (asking government counsel only for its position regarding deadlines and emphasizing that "the agency needs to understand" an oral order had been entered).

10

then pending before it"). Just as Section 1651 and this Court's inherent authority allowed it to issue a stay without meeting the mandamus standard, this Court may issue an order to *enforce* that stay without meeting the mandamus standard. *See* 16A Fed. Prac. & Proc. Juris. § 3954 (5th ed.) (appellate courts' stay authority "exists by virtue of the all writs statute, 28 U.S.C. § 1651") (citation omitted); *see id.* (noting that "the Supreme Court has termed the power 'inherent' and 'part of its (the court of appeals') traditional equipment'") (citations omitted).

Accordingly, the Supreme Court "has repeatedly recognized" a court's power "to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued." *United States v. New York Tel. Co.*, 434 U.S. 159, 172-74 (1977) (noting a variety of orders Section 1651 permitted). Indeed, Section 1651 even permits courts to issue orders against *nonparties* who could "frustrate the implementation of a court order." *Id.* at 174. Just as this Court could vacate a district court order holding a party in contempt for violating an injunction stayed by this Court, this Court can vacate a lower court order that contravenes its Stay Order by preventing defendants from undertaking the very actions this Court's Stay Order permitted.

11

In all events, mandamus would be an appropriate (though not the only) mechanism to correct a lower tribunal's violation of this Court's prior order and frustration of its future jurisdiction. *See Atlantic City Elec. Co. v. F.E.R.C.*, 329 F.3d 856, 857 (D.C. Cir. 2003) ("order[ing] the enforcement of our prior mandate" without addressing mandamus). Thus, in *Yablonski v. United Mine Workers of America*, 454 F.2d 1036 (D.C. Cir. 1972), where a violation of the court of appeals' earlier mandate was at issue and the court lacked an appeal before it, mandamus was "available to correct the asserted departures." *Id.* at 1038-39; *see, e.g.*, *Telecommunications Research and Action Center v. F.C.C.*, 750 F.2d 70, 76 (D.C. Cir. 1984).

While this Court need not resort to mandamus, it is particularly appropriate to "prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities." *Cheney v. U.S. District Court*, 542 U.S. 367, 382 (2004). Here, the district court's misunderstanding of this Court's Stay Order—and accompanying demand for live testimony about matters reserved to Executive Branch discretion—inappropriately "interfere[s] with the internal deliberations of" the Executive Branch, *Cobell v. Norton*, 334 F.3d 1128, 1140 (D.C. Cir. 2003), and

12

"divert[s] [defendants'] focus" from their duties, *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1065 (D.C. Cir. 1998).

**C.** Even if this Court needed another source of jurisdiction to afford defendants relief from the new injunction, defendants' new notice of appeal, Dkt. 115 (April 18, 2025), would provide it. That injunction is not described as a temporary restraining order nor does it include any temporal limitation. *See* Dkt. 113. The district court's attempt to recharacterize it as a temporary restraining order under Rule 65(b)(2) the next day via a minute order, *see* Minute Order (April 19, 2025), is unavailing; defendants' "appeal properly pursued from the district court's order divest[ed] the district court of control over those aspects of the case on appeal," and thus of jurisdiction to modify its prior order. *Princz v. Federal Republic of Germany*, 998 F.2d 1, 1 (D.C. Cir. 1993) (denying motion to stay district court proceedings as unnecessary given divestment). And this Court's consolidation of defendants' appeals obviates any objection (Response 7-8) based on which docket defendants filed this request in.

13

## CONCLUSION

This Court should promptly enforce or clarify its Stay Order. The government respectfully requests relief as soon as possible before the hearing the district court has scheduled for Monday, April 28, 2025.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MELISSA N. PATTERSON
*/s/ Catherine Padhi*
CATHERINE PADHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7712*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5091*
  *catherine.m.padhi@usdoj.gov*

APRIL 2025

14

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2597 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*/s/ Catherine Padhi*
Catherine Padhi

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Catherine Padhi*
Catherine Padhi